**FILED**

**JUL 2 3 2024**

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES DISTRICT COURT
DISTRICT OF CENTRAL ILLINOIS
PEORIA DIVISION

TREMEL BLACK,    )

  Plaintiff,    )

                                )    **COMPLAINT:**

  v.    )    Civil Action No. _____

UNITED STATES OF AMERICA,    )

  Defendant,    )

---

**COMPLAINT UNDER THE FEDERAL TORT CLAIMS ACT
FOR THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:**

---

### I. JURISDICTION AND VENUE:

**1)** This is a civil action authorized by §§ 28 U.S.C. 2671 et. seq. and 28 U.S.C. 1346(b)(1), as well as both 28 U.S.C. § 2679(d)(2) and 28 U.S.C. § 2675(a); as they pertain to the Federal Tort Claims Act, in which the United States of America is named as the defendant. This Court thus has proper jurisdiction to hear the case at hand; as the Plaintiff is asking for monetary damages, as allowed by law, plus and out of pocket costs.

**2)** The Central District of Illinois, (Peoria Division) is the appropriate venue under 28 U.S.C. § 1391(b)(2), because it is where the events giving rise to this claim occurred.

### II. PLAINTIFF:

**3)** Plaintiff, Tremel Black, is and was at all times mentioned herein, a prisoner of the United States Federal Government, (U.S.A.), and is in Federal custody.

(-1-)

... Plaintiff is currently housed at the F.C.I. Pekin Correctional Institution in Pekin, Illinois, where the incident occurred.

### III. DEFENDANT:

4) The Plaintiff is required under 28 U.S.C. § 2679(d)(2) to name the 'United States of America, as the defendant; as he cannot name the specific federal employee or agency, such as the Federal Bureau of Prisons as the defendant. Therefore, the Plaintiff, at this time respectfully believes that the United States Attorney General, would be the acting receipient of said Civil Action. His address is: U.S. Attorney Merrick Garland, 950 Pennsylvania Avenue, Washington, D.C. 20543.

### IV. FACTS:

5) I am an inmate housed at the Federal Correctional Institution, located at 2600 South 2nd Street, in Pekin, Ill. 61554. (P.O. Box 5000, Pekin, Ill. 61555). Between the dates of August 23, and August 30, 2023; at approximately 8:00 a.m., I was attending school, in the Educational Department, loctaed at FCI Pekin. I observed at that time, my housing unit, (Iowa 2) being approached by Compound and various other Staff members for an apparent Unit 'Shakedown.'

Upon returning to my Unit, my locker was standing wide ópened. (Which is strictly against B.O.P. policy, directive ... Bureau of Prisons Policy § 5580.08.) I found amongst certain items that were missing, was my Photograph album. These photographs were and are irreplaceable, period. Being that these photographs were stored in my locker appropriately, were not considered any type of pornography, and were confiscated, lost and presumably destroyed; has caused me not only extreme anxiety, but the mere action was the Intentional Infliction of Emotional Distress. (

(-2-)

6) After tryifg unsuccessfully to re-obtain my photograph album, (of which was legally purchased through commissary and **did not** contain any photographs that would be considered 'illicit'; I first went to Associate Warden Bragan, at mainline, and he suggested for me to file a property tort claim, as he stated that "he had several complaints about the housing unit search, but it is, what it is." I

7) I continued to try to find my missing property, by talking to various staff members; and took the Associate Warden's advice, and filed a property loss tort claim; as my photograph album was not all that was taken.

8) Approximately the weekend of July 4th, 2023, I was called for by Lieutenant Biegler, as to the fact that he was instructed to 'investigate my tort claim.' He stated to me, that he was surprised that my tort claim had made it that far, as he normally denys them out of hand. When I asked him why? Lieutenant Biegler stated, "that is just the way it is, and after the weekend was over, he would be denying this one also." Present at this conversation was Lieutenant Root, whom is still currently employed at F.C.I. Pekin.

9) After said trouble with having anxiety, and being depressed over the loss of family photos, many of which have been deceased and cannot be replaced; I tried to contact the psychology department, and managed to get a few minutes with Ms. Rhodes. After talking to Ms. Rhodes, and telling her that this whole episode was causing me endless nights of not being able to sleep, depression, bouts of anger at the whole situation of 'staff not caring, and not following policy', as well as anxiety issues, Ms. Rhodes suggested I go and talk to Lieutenant Biegler. After this 'bit of advice' from Ms. Rhodes, **after** what I had just explained to her, I started to e-mail Dr. Gomory and Dr. Stevens in Psychology asking for assistance.

**10)** After several attempts at trying to get an appointment with one of the Doctors in Psychology, in order to help me cope with my mental issues; (over the loss of said family photos, and the crass way in which I have been rebuffed) ... No assistance was forthcoming.

**11)** At this point, approxiamtely November 8th, 2023, I decided to file the tort of the Intentional Infliction of Emotional Distress, over the fact that this has caused me severe emotional distress. **No** staff have tried to assist me in the recovery of something that staff were **not** suppose to confiscate; **No** staff had written me a confiscation slip, as policy dictates; **No** staff from Psychology tried to assist me with my mental issues; and **no** staff acted in a professional manner as it relates to concerning themselves with the recovery of my family photos.

**12)** **B.O.P. policy** § 5580.08 (Inmate Personal Property) relates to what an inmate may have in his/her personal possession. it states: "It is the policy of the Bureau of Prisons that an inmate may possess ordinarily only that property which the inmate is authorized to retain upon admission to the institution, which is issued while the inmate is in custody, which the inmate purchases in the institution commissary, or which is apporved by staff to be mailed to, or otherwise received by an inmate."

**13)** Under § 553.11 (Limitations on inmate personal property: It states:
**(h) Personal Photos:** "An inmate may possess photographs, subject to the limitations of paragraph (b) of this section, so long as they are not detrimental to personal safety or security, or to the good order of the institution."
"Ordinarily, photographs, **particulary** those of family and friends, are approved, since they represent meaningful ties to the community."

(-4-)

14)  Under § 553.13 (Procedures for handling contraband;;it states:

(a) Staff shall seize any item in the institution which has been identified as contraband whether the item is found in the physical possession of an inmate, in an inmate's living quarters, or in common areas of the institution..

(b) Staff shall dispose of items seized as contraband **in accordance** with the following proceudres.

(2)  Items of personal property confiscated by staff as contraband are to be inventoried and stored pending identification of the true owner (if in question) and possible disciplinary action. Following an inventory of the confiscated items, st staff shall employ the following procedres.

(i)  Staff shall provide the inmate with **a copy of the inventory** as soon as practable. A copy of this inventory shall also be placed in the inmate's central file.

15)  This policy is and has been rarely followed. Shortly after I initially found my family photos to be missing, I immediately tried to find out the disposition of those photos as well as my other property, but continued to get the run-around by staff, until I finally went to Associate Warden Bragan, whom told me to file a tort claim for missing property.

16) The continued practice of B.O.P. staff just throwing away personal property, **without** following actual B.O.P. policy is outrageous behavior; and this is part and parcel of the actual definition of the tort of the Intentional Infliction of Emotional Distress. Whereas there have been several instances of outrageous behavior on the part of the Administration's actions over the past few years; staff just do as instructed by the Administrations guidance.

**17)** Had there been any issue with my family photographs, then a 'confiscation slip' should have been issued, and according to policy, I would have been given the opportunity to mail said photographs home. Yet, it is common practice for said staff at F.C.I. Pekin to not acknowledge said policy statement, and just 'throw away' said family photographs.

**18)** The loss of these photographs which include my late grandparents Robert and Lanzeena Black, and my Aunt Roberta Black; as well as my children when they were babies and in their youth, are irreplaceable. This has caused me great anquish.

### V. EXHAUSTION OF LEGAL REMEDIES:

**19)** Plaintiff Tremel Black used Form 95 procedure as to the process of filing the Tort for the Intentional Infliction of Emotional Distress, due to the emotional injury he has incurred at F.C.I. Pekin. See **Exhibit A1-A2.**

**20)** The Plaintiff sent the required two copies of said tort claim to the address listed on the instructions provided by the Safety Department here at FCI Pekin. See Instruction Sheet for Form 95. **Exhibit B.**

**21)** The Plaintiff sent said tort to: North central Regional Offices, at 400 State Avenue, Tower II, Suite 800, in Kansas City, Kansas  66101, on or about November 9th, 2023; via the legal mail process at F.C.I. Pekin.

**22)** After not receiving any acknowledgment from Region as to the initial claim, Plaintiff sent an inquiry letter on January 4th, 2024. See **Exhibit C.**

**23)** After not receiving **any** response to that said inquiry, Plaintiff again sent a second inquiry letter, via certified mail. See **Exhibit D.**

**24)** To date, (07/15/24) Plaintiff **has not** received any correspondence from North Central Regional Office, (Bureau of Prisons) located in Kansas City, Kansas.

25)   Being that the Bureau of Prisons has not responded to said claim within the requisite **six months,** Plaintiff deems the claim as having been denied under 28 U.S.C. § 2675(a), and is therefore filing suit under said 'deeming provision' of the Federal Tort Claim Act.

## VI. LEGAL CLAIMS:

26)   Plaintiff realleges and incorporates by reference paragraphs **1 - 18**............. Plaintiffs' Federal Tort Claim Acts claims, are authorized by 28 U.S.C. § 1346.

27)   The Intentional Infliction of Emotional Distress claim against the United States of America, due to the improper actions of staff at the Federal Bureau of Prison's Pekin Federal Correctional Institution, Pekin Illinois; is a just claim.

28)   Under Illinois law, a plaintiff claiming 'IIED' must demonstrate that the defendant(s) intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. **Sornberger v. City of Knoxville,** 434 F.3d 1006, 1030 (7th Cir. 2006); also see **Lopez v. City of Chicago,** 464 F.3d 711, 720 (7th Cir. 2006).

29)   The tort has three components: **(1)** the conduct involved must be truly extreme and outrageous; **(2)** the actor must either intend that his conduct inflict severe emotional distress, **or know** that there is at least a high probability that his conduct will cause severe emotional distress; and **(3)** the conduct must in fact cause severe emotional distress.

30)   To be actionable the defendants conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." **Honaker v. Smith,** 256 F.3d 477, 490 (7th Cir. 2001).

(-7-)

**31)** The Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants. The Photographs of which were taken **cannot** be replaced; this loss has taken a severe mental toll upon the Plaintiff.

### VII. PRAYER FOR RELIEF:

**32)** **WHEREFORE,** Plaintiff respectfully prays that this Court enter judgement granting Plaintiff:

**33)** Compensatory damages of that asked for initially in the tort claim itself, which was **$ 8,500.00.** (Eight Thousand Five Hundred Dollars).

**34)** Punitive damages, or an additional $ 10,000.00. (Ten Thousand Dollars).

**35)** Plaintiff's costs in this suitt

**36)** Any additional relief this Court deems just, proper, and equitable.

Dated: ___July 22, 2024___

Respectfully Submitted,

Tremel Black 30802-171
F.C.I. Pekin
P.O. Box 5000
Pekin, Ill. 61555-5000

### VERIFICATION:

I have read the foregoing complaint and hereby verify that the matters alledged therein are true, except as to matters alledged on information and belief, and as to those, I beleive them to be true. I certify under the penalty of perjury that the foregoing is true and correct. Executed at Pekin FCI, Pekin, Ill. on 07/15/24.

Tremel Black

## Certificate of Service:

I, **Tremel Black,** # 30802-171, currently residing at FCI Pekin, Pekin, Ill., do so swear and certify that I placed the aforegoing Complaint under the FTCA; in a first class pre-paid envelope, and utilizing the legal mail system here at FCI Pekin did so mail it to the parties listed below, on the 22 day of July, 2024.

Clerk of the U.S. District Court    **and**    The U.S. Attorney General
U.S. District Courthouse    950 Pennsylvania Avenue
100 N.E. Monroe Street,    Washington, D.C. 20543
Room 309
Peoria, Ill.  61602

Sworn and Attested to:

by: _____

Tremel Black
30802-171
F.C.I. Pekin
P.O. Box 5000
Pekin, Ill. 61555-5000



Tremel Black  # 30802-171
Federal Correctional Institution
P.O. Box 5000
Pekin, Ill. 61555-5000

Retail

U.S. POSTAGE PAID
FCM LG ENV
PEKIN, IL 61554
JUL 22, 2024

$0.00

RDC 99

61602

S2324E500955-84

Legal Mail:

⇔30802-171⇔
U S District Court
100 N.E. Monroe Street, Room 309
Peoria, IL 61602
United States

RECEIVED

JUL 22 2024

FCI PEKIN MAIL ROOM